NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

DAVID L. CHAPMAN,

            Plaintiff,

            v.

AMERICAN INSTITUTE OF CERTIFIED
PUBLIC ACCOUNTANTS,

            Defendant.

**OPINION**

Civil Action No. 03-3692 (WHW)

---

WALLS, District Judge.

Defendant American Institute of Certified Public Accountants ("AICPA") moves for summary judgment against Plaintiff David L. Chapman. The motion for summary judgement is granted.

### FACTS AND PROCEDURAL BACKGROUND

Plaintiff, an African-American male, worked in AICPA's Jersey City, New Jersey office from his hiring on April 13, 1998 until his termination on June 14, 2001. Throughout his tenure at AICPA, Plaintiff was a technical manager in the Professional Ethics Division. Plaintiff's responsibilities included investigation of cases, submission of case summaries, and answering the Professional Ethics Division technical hotline, among others. At all times during Plaintiff's employment at AICPA, his immediate supervisor was a white female. During this period, Plaintiff was the only African-American in the Professional Ethics Division.

Although initial evaluations were favorable, Plaintiff's supervisors became critical of his work and eventually placed him on AICPA's System to Accept Responsibility for Job

**NOT FOR PUBLICATION**

Performance program ("STAR") in April, 2000. STAR sets out certain policies and procedures to be followed in attempting to remedy deficient job performance. While Plaintiff was on STAR, a white female technical manager in the Professional Ethics Division was promoted to senior technical manager.[1] Applications were not solicited for this position and no other technical managers were considered for the position. Citing lack of improved performance, Defendant ultimately terminated Plaintiff fourteen months after placing him on STAR. Plaintiff's position was filled by a Latino female.

Plaintiff filed suit in Superior Court of New Jersey on June 13, 2003 and the action was removed to this Court on August 5, 2003. Plaintiff's complaint asserts five causes of action: (1) gender discrimination under 42 U.S.C. § 1981; (2) race discrimination under 42 U.S.C. § 1981; (3) gender discrimination under N.S.J.A. 10:5-1 et seq. (New Jersey Law Against Discrimination, "LAD"); (4) race discrimination under LAD; and (5) wrongful discharge. The first and fifth counts were dismissed by this Court on October 22, 2003.[2] Defendant now moves for summary judgment on the remaining counts.

**LEGAL STANDARD**

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(C). A factual dispute between the parties will not defeat a motion for

---

[1] Defendant disputes that the change in title was in fact a promotion, but the Court will accept the Plaintiff's characterization for the purpose of this summary judgment motion.

[2] Plaintiff's complaint asserts two "Fifth Cause of Action" counts, the second of which was dismissed. Additionally, the third and fourth counts of the complaint allege identical gender discrimination claims under LAD. To avoid confusion, the Court has renumbered the counts for the purposes of this opinion.

**NOT FOR PUBLICATION**

summary judgment unless it is both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under the substantive law, it would affect the outcome of the suit. Id. at 248. The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. Celotex v. Catrett, 477 U.S. 317, 318 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). To survive a motion for summary judgment, a non-movant must present more than a mere scintilla of evidence in his favor. Woloszyn v. County of Lawrence, 396 F.3d 314, 319 (3d Cir. 2005). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001). At the summary judgment stage the Court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. In doing so, the Court must construe the facts and inferences in the light most favorable to the non-moving party. Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002).

**DISCUSSION**

Plaintiff argues that AICPA discriminated in the terms, conditions and privileges of his employment by not promoting him and discharging him because of his race and gender. Plaintiff

NOT FOR PUBLICATION

apparently seeks to pursue a retaliation claim, as well, although such a claim was never filed and will not be considered by the Court.[3]

### I. Plaintiff's Race Discrimination Claims

Plaintiff asserts that he has been discriminated against on the basis of race under both LAD and 42 U.S.C. § 1981. Discrimination claims based on these statutes are analyzed under the framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Dep't of Comm. Affairs v. Burdine, 450 U.S. 248 (1981). See, e.g., Erickson v. Marsh & McLennan Co., 117 N.J. 539, 549-50 (1990) (applying this framework to a discrimination case brought under LAD); Watkins v. Nabisco Biscuit Co., 224 F. Supp. 2d 852 (D.N.J. 2002) (applying this framework to a race discrimination case brought under both LAD and § 1981). Under this line of cases, plaintiff bears the burden of establishing a prima facie case of discrimination. Once a prima facie case of discrimination has been made, an inference of discrimination is established and the burden shifts to the defendant to articulate a legitimate, non-discriminatory justification for the adverse employment action. Once a legitimate, non-discriminatory justification is established, the inference of discrimination is rebutted and drops from the case. Plaintiff retains the ultimate burden of persuasion. See generally Burdine, 450 U.S. at 253-56.

---

[3]Plaintiff was granted partial leave to file an amended complaint within five days of the Court's order of August 16, 2004. No amended complaint was ever filed with the Court and Defendant maintains that it was never served with such. Plaintiff does not address the issue in his opposition papers, but merely includes an exhibit purporting to be the amended complaint and cover letter (Exh. XX, dated Aug. 20, 2004). This will not suffice. See, e.g., In re Ford Motor Co. Ignition Switch Products Liability Litigation, 19 F. Supp. 2d 263, 271 (D.N.J. 1998).

**NOT FOR PUBLICATION**

### A. Discriminatory Discharge

The elements of a prima facie case are "not inflexible," and may be formulated differently in different factual situations. Burdine, 450 U.S. at 253-54. In order to maintain an action for discriminatory discharge, Plaintiff must demonstrate "[1] that he was in the protected group, [2] that he was performing his job at a level that met his employer's legitimate expectations, [3] that he nevertheless was fired, and [4] that the employer sought someone to perform the same work after he left." Clowes v. Terminix Intern., Inc., 109 N.J. 575, 597 (1988). An alternative and more general formulation of the second element of the prima facie case asks whether Plaintiff remained "qualified" for his job. See, e.g., Murphy v. Housing Auth. and Urban Redevelopment Agency of Atlantic City, 32 F. Supp. 2d 753, 763 (D.N.J. 1999), aff'd, 208 F.3d 206 (3d Cir. 2000). Regardless of the formulation, the second is the only element of the prima facie case in dispute with regard to Plaintiff's termination. For the purposes of this analysis, the Court will consider performance at a level meeting the employer's legitimate expectations to be a requirement of job qualification.

Plaintiff maintains that he "was qualified for his job position of Technical Manager in that he received favorable evaluations for the years of 1998 and 1999." Pl.'s Br. at 5. Plaintiff goes on to contest many of Defendant's proffered performance deficiencies, claiming that he was not shown many of the documents or informed of his supervisors' complaints. He argues that he faced "impossible deadlines" and was subject to "unwarranted performance related disciplinary actions." Pl.'s Br. at 15, 5. Plaintiff essentially concedes several of Defendant's documented performance deficiencies, however. He admits to missing a training course, to not sending out

**NOT FOR PUBLICATION**

correspondence (but blaming his secretary), to having difficulty progressing on and closing cases, and to being counseled and placed on STAR more than a year before his employment was terminated. Pl.'s Br. at 6-11. Without taking into account the significant number of disputed performance deficiencies, the undisputed facts are adequate to establish that Plaintiff was not meeting AICPA's legitimate expectations.

### B. Discriminatory Failure to Promote

In order to maintain an action for discriminatory failure to promote, Plaintiff must establish "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a position for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." Burdine, 450 U.S. at 253-54 (quoting McDonnell Douglas, 411 U.S. at 802). See also Erickson, 117 N.J. at 550. It is undisputed that Defendant was not seeking applicants for the senior technical manager position assumed by the white female and that it did not consider any other technical managers for the position. Even if AICPA had been soliciting applications for an available position, Plaintiff would have been ineligible due to the undisputed fact that he was on STAR and employees assigned to that program were ineligible for promotion. Most importantly, however, Plaintiff cannot establish his qualification for promotion to senior technical manager because he was not meeting AICPA's legitimate expectations for the technical manager position. Plaintiff fails to make a prima facie case for discriminatory failure to promote because he was not qualified for the position.

NOT FOR PUBLICATION

### C. Pretext

Even if the Court were to find that Plaintiff were qualified for his job, the record is without evidence that Defendant's justifications for its adverse employment actions were a pretext for discrimination. Plaintiff maintains that other technical managers did not meet all employment standards and experienced no disciplinary action. In and of itself, however, this assertion is inadequate to support an inference of discrimination. Employers are often faced with a situation in which many employees have imperfect performance records. It is not the business of this Court to second-guess an employer's decision when there is a non-discriminatory justification for the action and no evidence of discrimination based on race or gender. The Court finds that AICPA has articulated a legitimate, non-discriminatory justification for Plaintiff's discharge and there is no direct evidence nor circumstantial evidence upon which a reasonable jury could base a finding of discrimination.

## II. Plaintiff's Gender Discrimination Claim

Plaintiff asserts that he has been discriminated against on the basis of gender under LAD. In analyzing reverse gender discrimination claims under LAD, New Jersey has adopted the McDonnell Douglas framework, with some modification. See Erickson, 117 N.J. at 549-50. "In a reverse discrimination case based on disparate treatment, a prima facie case is established upon a showing (1) that background circumstances support the suspicion that the defendant is the unusual employer who discriminates against the majority [males]; and . . . (2) that the employer treated similarly situated employees differently because of their race or sex." Murphy v. Housing Auth. and Urban Redevelopment Agency of Atlantic City, 32 F. Supp. 2d 753, 764 (D.N.J.

**NOT FOR PUBLICATION**

1999), aff'd, 208 F.3d 206 (3d Cir. 2000) (citing Erickson) (internal quotations omitted). "The types of 'background circumstances' which might support an inference of reverse discrimination fall into two categories: (1) evidence indicating that the particular employer at issue has some reason or inclination to discriminate invidiously against the majority; and (2) evidence indicating that there is something 'fishy' about the facts of the case at hand that raises an inference of discrimination." Id. (internal quotations omitted).

      Viewing the facts and inferences in the light most favorable to the Plaintiff, a prima facie case of gender discrimination has not been made. Plaintiff has not shown any reason or inclination on the part of Defendant to discriminate invidiously against men and has shown nothing "fishy" about Defendant's conduct. The best evidence which Plaintiff can muster is that a female technical manager assigned to work on special projects was given a home computer in addition to her office computer and was not required to answer the hotline like the other technical managers. These types of management decisions are well within an employer's prerogative and, in the absence of additional evidence, are not suspect. Plaintiff also argues that Defendant promoted a woman to senior technical manager without giving male technical managers an opportunity to apply for the position. Plaintiff cites no legal requirement that an employer consider all similarly-situated employees in making a promotion decision, nor does he provide any evidence that the woman was promoted because of her sex. Plaintiff admits that other male technical managers have been promoted to senior technical manager. Nothing in these facts gives rise to an inference of reverse discrimination on the basis of gender.

NOT FOR PUBLICATION

## CONCLUSION

Plaintiff has failed to establish a prima facie case of race or gender discrimination. Even if Plaintiff could meet this burden, Defendant has articulated rational, non-discriminatory justifications for its employment decisions and there is no direct evidence nor circumstantial evidence upon which a reasonable jury could find that these justifications were a pretext for race or gender discrimination. For these reasons, summary judgment is granted on the second, third, and fourth counts.

William H. Walls, U.S.D.J.

**Appearances**

Cynthia H. Hardaway
60 Park Place, 16th Floor
Newark, NJ 17102
        Attorney for Plaintiff

Jennifer A. Keller
Steven M. Lucks
EDWARDS & ANGELL, LLP
51 John F. Kennedy Parkway
Short Hills, NJ 07078
        Attorneys for Defendant